DOUGLAS J. CLARK, State Bar No. 171499
dclark@wsgr.com
CAZ HASHEMI, State Bar No. 210239
chashemi@wsgr.com
KATHERINE L. HENDERSON, State Bar No. 242676
khenderson@wsgr.com
MOLLY A. ARICO, State Bar No. 260472
marico@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100

Attorneys for Defendants
ALIGN TECHNOLOGY, INC. AND
THOMAS M. PRESCOTT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CHARLES WOZNIAK, Individually and on Behalf of All Other Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>ALIGN TECHNOLOGY, INC. AND THOMAS M. PRESCOTT,<br><br>Defendants. | Case No.: C-09-03671-MMC<br><br>**DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>Hearing Date: January 13, 2012<br>Hearing Time: 9:00 a.m.<br>Courtroom: 7, 19th floor<br>Before: Judge Maxine M. Chesney |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ............................................................................................................................. 1

I.    PLAINTIFFS' PATIENTS FIRST ALLEGATIONS AGAIN FAIL TO STATE A CLAIM UNDER SECTION 10(b) ............................................................................... 1

II.   PLAINTIFFS' NEW ALLEGATIONS REGARDING CLINADVISOR FAIL TO STATE A CLAIM ............................................................................................................ 3

    A.    Plaintiffs Fail to Plead Loss Causation ................................................................. 4

    B.    General Statements of Optimism Are Not Actionable .......................................... 5

    C.    Forward-Looking Statements Are Protected by the Safe Harbor and Bespeaks Caution Doctrine ................................................................................... 7

    D.    Align Did Not Omit Any Material Information .................................................... 8

III.  WHETHER CONSIDERED SEPARATELY OR HOLISTICALLY, THE SAC'S ALLEGATIONS FAIL TO RAISE A STRONG INFERENCE OF SCIENTER ............ 12

CONCLUSION ........................................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Acito v. IMCERA Group, Inc.,* 47 F.3d 47 (2d Cir. 1995) .............................................................. 14

*Dura Pharm., Inc. v. Broudo*, 544 U.S. 336 (2005) .................................................................. 4, 5

*Glazer Capital Mgmt. LP v. Magistri,* 549 F.3d 736 (9th Cir. 2008) .......................................... 12

*Hockey v. Medhekar*, No. C-96-0815 MHP, 1997 WL 203704 (N.D. Cal. Apr. 15, 1997) ........................................................................................................................................ 8

*In re Convergent Tech. Sec. Litig.*, 948 F.2d 507 (9th Cir. 1991) ................................................. 8

*In re Copper Mountain Sec. Litig.*, 311 F. Supp. 2d 857 (N.D. Cal. 2004) .................................. 8

*In re Cutera Sec. Litig.,* 610 F.3d 1103 (9th Cir. 2010) ................................................................ 3

*In re Daou Systems, Inc.,* 411 F.3d 1006 (9th Cir. 2005) .......................................................... 15

*In re Lexar Media, Inc. Sec. Litig.*, No. C-04-2013 SC, 2005 WL 1566534 (N.D. Cal. July 5, 2005) ............................................................................................... 15

*In re Oxford Health Plans, Inc.*, 187 F.R.D. 133 (S.D.N.Y. 1999) ............................................. 14

*In re Portal Software, Inc. Sec. Litig.,* No. C-03-5138 VRW, 2005 WL 1910923 (N.D. Cal. Aug. 10, 2005) ............................................................................................ 15

*In re Secure Computing Corp., Sec. Litig.*, 184 F. Supp. 2d 980 (N.D. Cal. 2001) ..................... 15

*In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970 (9th Cir. 1999), *rev'd on other grounds by South Ferry LP No. 2 v. Killinger,* 542 F.3d 776 (9th Cir. 2008) ................. 14

*In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059 (N.D. Cal. 2001) ........................................................................................................................................ 15

*In re Syntex Corp. Sec. Litig.*, 95 F.3d 922 (9th Cir. 1996) ............................................. 2, 4, 9, 11

*In re Vantive Corp. Sec. Litig.,* 283 F.3d 1079 (9th Cir. 2002), *abrogation on other grounds recognized by South Ferry LP No. 2 v. Killinger,* 542 F.3d 776 (9th Cir. 2008) ........................................................................................................................ 15

*Lapiner v. Camtek, Ltd.*, No. C 08-01327 MMC, 2011 WL 445849 (N.D. Cal. Feb. 2, 2011)*) ................................................................................................................* 5

*Lormand v. US Unwired, Inc.*, 565 F.3d 228 (5th Cir. 2009) ..................................................... 5, 8

*Metzler Inv. GMBH v. Corinthian Colls., Inc.,* 540 F.3d 1049 (9th Cir. 2008) .......................... 4, 5

*No. 84 Employer Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920 (9th Cir. 2003) .............................................................................. 13, 15

*Plevy v. Haggerty*, 38 F. Supp. 2d 816 (C.D. Cal. 1998) .................................................................. 15

*South Ferry LP No. 2 v. Killinger*, 542 F.3d 776 (9th Cir. 2008) ..................................................... 13

*South Ferry LP No. 2 v. Killinger*, 687 F. Supp. 2d 1248 (W.D. Wash. 2009) ............................... 13

*Tellabs Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ........................................... 12, 13

*Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991), *vacated by Sandberg v. Va. Bankshares, Inc.,* No. 91-1783 (L), 1993 WL 524680 (4th Cir. 1993) ......................... 8

*Zucco Partners, LLC v. Digimarc Corp.,* 552 F.3d 981 (9th Cir. 2009) .................................. 12, 13

**STATUTES**

15 U.S.C. § 78u-5(i)(A) – (C) ................................................................................................................ 8

**INTRODUCTION**

Plaintiffs apparently hope to obscure the numerous problems with the SAC by simply reiterating their misleading allegations en masse and ignoring the numerous arguments raised in Defendants' opening brief, which demonstrate that none of the allegedly false statements at issue is actionable. Yet, plaintiffs cannot escape the fatal defects with their allegations.

First, plaintiffs have offered no new allegations to resurrect their already dismissed allegations regarding Patients First. Simply asserting they have offered "substantial new allegations" does not make it so. These allegations should be summarily dismissed. Second, plaintiffs have not properly alleged loss causation with respect to their new ClinAdvisor allegations. Contrary to plaintiffs' assertions, they were obligated to point to a disclosure in which the alleged ClinAdvisor fraud was revealed to the market. They failed to do so and their ClinAdvisor claims should be dismissed on this basis alone. Third, plaintiffs have not adequately alleged that Defendants made any false or misleading statements with respect to ClinAdvisor. Plaintiffs' CW allegations do not show that any of Defendants' statements, when analyzed in full and in context, instead of misleading snippets, was false or misleading. Finally, plaintiffs' scienter allegations, regardless of how they are viewed, do not create a compelling inference that Defendants acted with fraudulent intent. The more compelling inference is that Defendants simply did not accurately predict future developments in their business. Accordingly, like plaintiffs' first complaint, the SAC should be dismissed.

**ARGUMENT**

**I.   PLAINTIFFS' PATIENTS FIRST ALLEGATIONS AGAIN FAIL TO STATE A CLAIM UNDER SECTION 10(b)**

Plaintiffs' opposition fails to address the fundamental deficiencies of the Patient First allegations, deficiencies which were clearly identified by the Court in its June 2011 Order and which the SAC failed to remedy. Order at 4-11, 13-15. Instead, plaintiffs merely repeat allegations already deemed insufficient without adding any new information. Plaintiffs' Opposition ("Opp.") at 1-2, 12-16. Like before, the Court should reject these allegations.

**January 30, 2007 Statements.**  Plaintiffs acknowledge that the Court previously found Mr. Prescott's statement that, "[w]e resolved our legal disputes with OrthoClear and refocused our efforts on product development, customer service and market expansion" is non-actionable puffery.  Opp. at 2, 12 (citing Order at 6).  Yet, they continue to insist it is a false statement of fact because "Align's sales representatives were focused on the 'overwhelming' backlog created by the free Patients First cases."  *Id*.  As the Court previously held, plaintiffs have not adequately alleged that Defendants were aware of any undisclosed facts undermining the accuracy of this general optimistic statement.  Order at 8.  Plaintiffs offer nothing new in the SAC.

First, the Court already held that Defendants' purported admissions in October 2007 regarding Align's sale force do not show Defendants had any contemporaneous knowledge that was contradictory to or inconsistent with Mr. Prescott's January 2007 statements.  *Compare* Opp. at 13 *with* Order at 21-22.  Second, the Court already determined that CW1-4's reports of processing backlog, heavier workload and customer feedback do not contradict Defendants' statements as to Align's growth and progress.  *Compare* Opp. at 12-13 *with* Order at 7-8.  Third, while CWs 9 and 11 may be new, they offer nothing more than the same generalized claims already provided by CWs 1-4, *i.e*., that sales representatives were "overwhelmed" with Patients First and that there was a backlog.  *Compare* Opp. at 14 *with* Order at 7-8.  As before, plaintiffs do not provide any specific data or details which contradict Defendants' public statements about Align's business at the time the statements were made.  Opening Brief ("OB") at 5.[1]

**April 24, 2007 Statements.**  Plaintiffs similarly offer nothing new with respect to Defendants' April 24, 2007 statements – "[n]o, it's a very consistent approach.  We haven't changed" and "we have no issues there and that bottleneck no longer exists."  OB at 4-5.

---

[1] Plaintiffs reliance on *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 929-933 (9th Cir. 1996) is misplaced.  Opp. at 12-13.  Unlike the case distinguished in *Syntex*, where the court found that defendants' "mildly cautionary statements 'not only d[id] not cure, but arguably contribute[d] to the alleged misconception that the new stores were increasing the [c]ompany's profitability because it assume[d] an increase in earnings and focuse[d] only on the rate of that increase[,]'" in this case, Align repeatedly and clearly *disclosed* the backlog and processing delay issues about which plaintiffs complain.  *Syntex*, 95 F.3d at 927 (citation omitted) (alteration in original); Order at 15-17.

Plaintiffs claim that CWs 9 and 10 offer "new allegations and detail." Opp. at 15. But the allegations cited merely parrot those previously offered by other CWs. OB at 5 (*comparing* ¶ 91, 93 *with* FAC ¶ 73; ¶ 92 *with* FAC ¶ 60; and ¶ 94 *with* FAC ¶ 74). As the Court previously ruled, plaintiffs "fails to show how the [April 24, 2007] statements were misleading in light of the alleged omissions" and "none of the [CW] allegations contradicts defendants' statements." Order at 13-15.

**July 25, 2007 Statements.** Despite the Court's prior ruling that Defendants' projections fall within the safe harbor, plaintiffs reiterate their allegations regarding the alleged falsity of Align's July 2007 case shipment projections. Order at 9-11; Opp. at 16. Plaintiffs claim that the Court erred in holding the safe harbor is applicable because the Court did not address whether Align's cautionary statements were themselves misleading. Opp. at 16. Not so. The Court clearly considered the numerous cautionary statements provided in Align's public filings and held them to be "meaningful" because they "identified the risks plaintiff alleges ultimately materialized, specifically, the risk of a backlog created by the Orthoclear settlement and resulting effects on sales." Order at 10-11, 16.

Plaintiffs also repeat their assertion that Defendants' July 2007 projections lacked a reasonable basis. Opp. at 16-17. As a preliminary matter, plaintiffs ignore that Align actually met its revenue guidance throughout the Class Period and only missed its case guidance in Q3 2007 by a mere 1000 out of 53,000 cases. OB at 18. Even if the projections had been materially off, however, plaintiffs' allegations regarding Patients First (or even ClinAdvisor, as discussed *infra*) do not demonstrate that Align lacked a reasonable basis for these projections at the time they were made. Order at 8. Moreover, given the Court's prior holding that Defendants' projections fall within the safe harbor, these scienter allegations are ultimately irrelevant because the forward looking statements are "'not actionable regardless of the plaintiff's showing of scienter.'" OB at 5 (quoting *In re Cutera Sec. Litig.,* 610 F.3d 1103 (9th Cir. 2010)).

**II. PLAINTIFFS' NEW ALLEGATIONS REGARDING CLINADVISOR FAIL TO STATE A CLAIM**

Plaintiffs claim they have met their pleading burden with respect to their ClinAdvisor

1  allegations because the Court is required to accept all factual allegations in the SAC as true.
2  Opp. at 5.  The Court is not required, however, to accept plaintiffs' misleading recitation of
3  Defendants' statements in a vacuum.  To the contrary, plaintiffs' own case citations confirm that
4  each of the challenged statements must be examined in light of when, and the context in which,
5  they were made.  *Syntex*, 95 F.3d at 933.  Plaintiffs' opposition, like the SAC, completely ignores
6  three important points about this context.

7  First, ClinAdvisor was not a new product of Align's – it was a software tool.
8  Accordingly, ClinAdvisor was never intended to generate revenue directly, but rather, was
9  intended to help general practitioner dentists ("GPs") gain more confidence in using Align's
10 main product Invisalign.  OB at 3.  Second, ClinAdvisor was merely a "first step" and part of a
11 broader long-term strategic initiative to increase GP utilization of Invisalign.  OB at 15.  Align
12 never said that ClinAdvisor itself would lead to increased utilization during the Class Period.
13 Rather, Mr. Prescott specifically noted that any increases in utilization would be "slow" and
14 "relative."  OB at 16.  Third, ClinAdvisor was released initially only in a pilot test program so
15 that Align could assess the tool based on GP feedback and make any needed improvements.  OB
16 at 3-4.  Each of Defendants' statements about ClinAdvisor (most of which were made during the
17 course of this pilot program) must be analyzed in this overall context.  When this context is
18 properly considered, it is clear that plaintiffs simply have not and cannot state a claim.

19 Of course, as illustrated in Defendants' opening brief, the Court need look no further than
20 plaintiffs' loss causation allegations in order to dismiss the ClinAdvisor allegations in their
21 entirety.

22 **A.  Plaintiffs Fail to Plead Loss Causation**

23 Plaintiffs' opposition seeks to convince the Court that there is no pleading burden with
24 respect to loss causation.  Opp. at 23-25.  Both the Supreme Court and Ninth Circuit, however,
25 have made clear that there is a significant pleading burden with respect to loss causation.  *Dura*
26 *Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (plaintiff must "provide the defendant with
27 'fair notice of what the plaintiff's claim is and the grounds upon which it rests'") (citation
28 omitted); *Metzler Inv. GMBH v. Corinthian Colls., Inc.,* 540 F.3d 1049, 1063-64 (9th Cir. 2008)

1  (plaintiff "must allege that the practices that the plaintiff contends are fraudulent were revealed
2  to the market and caused the resulting losses").

3        Plaintiffs' opposition makes clear that the SAC fails to meet this burden because it
4  provides no indication of proximate cause.  Indeed, plaintiffs concede that the disclosure which
5  purportedly revealed the fraud does not even mention ClinAdvisor.  Opp. at 24.  While plaintiffs
6  attempt to argue that somehow "the market linked" Defendants' disclosure of lower case
7  shipments with ClinAdvisor, they offer no support whatsoever for that assertion.  Opp. at 24-25.
8  Indeed, none of the analyst reports cited makes any connection between Align's October 24,
9  2007 announcements and ClinAdvisor.  *Id*.; ¶ 116.  CW9's musings about a purported link, even
10 if credited (which they should not be (*infra* at 11-12)), are irrelevant to what the market knew.
11 OB at 8, n.2.  Plaintiffs' allegations are simply insufficient to state a claim for securities fraud.
12 *Dura*, 544 U.S. at 346-47 ("[A]llowing a plaintiff to forgo giving any indication of . . . proximate
13 cause . . . would bring about harm of the very sort the [Reform Act] seek[s] to avoid."); *Metzler*,
14 540 F.3d at 1064 (finding drop in stock price insufficient to demonstrate market "'understood' a
15 defendant's statement precipitating a loss as a coded message revealing the fraud."); OB at 6-8.

16       Plaintiffs' attempt to distinguish *Lapiner v. Camtek, Ltd.*, No. C 08-01327 MMC, 2011
17 WL 445849 (N.D. Cal. Feb. 2, 2011*)* misses the mark.  Opp. at 24-25.  As in *Lapiner*, plaintiffs
18 here fail to plead any factual allegations that demonstrate how Align's lowered case shipments
19 and utilization rates in October 2007 disclosed any fraud involving ClinAdvisor.  OB at 7-8.
20 This is especially true given that, as demonstrated below, Align never said that ClinAdvisor
21 would lead to higher utilization rates during the Class Period so it makes no sense to assume that
22 the market made the opposite inference, *i.e.*, that lower utilization rates must have been
23 attributable to problems with ClinAdvisor.  *See infra* at 10-12.  Plaintiffs' own cases are in
24 accord.  *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 260 (5th Cir. 2009) (loss causation not
25 properly alleged where plaintiff failed to point to any disclosure related to subject matter of
26 purportedly false statements).

27     **B.**    **General Statements of Optimism Are Not Actionable**

28       Plaintiffs' opposition does not dispute that certain of Defendants' statements are non-

actionable puffery as to which plaintiffs have not alleged that Defendants had no reasonable basis for belief. *Compare* Opp. at 10 *with* OB at 8-9 (citing ¶ 69 ("We are very pleased with the learning from our pilot launch"); ¶ 84 ("ClinAdvisor is a first step"); ¶ 97 ("[w]e continue to see expansion")). As to the remaining statements of optimism (¶¶ 70, 83, 95, 96), plaintiffs argue that they are not "feel good monikers" because they are "specific statements about the performance of Align's only new product offering that was touted as the answer to increasing Align's utilization, a key metric." Opp. at 10. Yet, as discussed *infra*, Defendants never touted ClinAdvisor as a new product or the answer to increasing utilization and plaintiffs offer no facts to indicate that Defendants had any reason to otherwise question their statements about the ClinAdvisor pilot program. OB at 8-11.

Plaintiffs argue that Mr. Prescott's statement that Align was "getting really great feedback" in the ClinAdvisor pilot program was false because "[m]ultiple witnesses recount that ClinAdvisor's pilot launch was 'negative,' 'poor' and most importantly, that the product itself was 'ineffective' to drive utilization rates." Opp. at 6. Once again, plaintiffs ignore the context in which the "really great feedback" was received, *i.e.*, in connection with a pilot test launch where Align disclosed that it was releasing the tool to a limited number of users as a "first step" so that it could "extract learning from the earlier users [and] then implement that in the next release." OB at 10. Plaintiffs further ignore that Align itself disclosed that problems were reported in the initial pilot testing. OB at 9-10. Plaintiffs also fail to address the obvious holes in their CW allegations, *i.e.*, what did these witnesses mean by "negative" or "ineffective" and what percentage of the pilot test participants reported this feedback. Plaintiffs' vague CW allegations simply do not show that Mr. Prescott lacked a reasonable basis for his optimistic statements.[2]

---

[2] Plaintiffs argue that Defendants are really challenging the materiality of the statements at issue, that Defendants' reference to their pre-Class Period "statements is a 'thinly-veiled' truth-on-the-market defense," and that such determinations should be left to the trier of fact. Opp. at 3, 11. Although plaintiffs are correct that Defendants' statements about ClinAdvisor were not, in fact, material, Defendants did not raise these arguments in their motion to dismiss. Rather, Defendants argued that, in light of the context in which the statements were made and because the CW allegations do not actually allege any contrary facts, their statements did not create an

(continued...)

DEFENDANTS' REPLY BRIEF ISO MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT, C-09-03671-MMC   -6-   4723879_1.DOCX

1   **C.   Forward-Looking Statements Are Protected by the Safe Harbor and Bespeaks Caution Doctrine**

Plaintiffs argue that the safe harbor is unavailable for several reasons, none of which has any merit. First, plaintiffs' allegations regarding knowledge of falsity (Opp. at 9) are irrelevant because, as discussed below, Align's cautionary statements were sufficient and thus the safe harbor applies. OB at 12. Even if the cautionary statements could somehow be deemed insufficient, however, plaintiffs have not alleged actual knowledge. *Infra* at Sec. III.

Second, plaintiffs argue that Align's cautionary statements were insufficient because they did not "'caution investors that ClinAdvisor was a flawed concept'" and "ineffective." Opp. at 8 (quoting ¶ 165). Yet, Align warned investors of precisely the risk plaintiffs allege materialized, *i.e.*, that ClinAdvisor would not be widely accepted and would not increase utilization and sales. OB at 12. Moreover, Align specifically warned that "'[a]lthough we expect that over the long term our utilization rates will improve, we expect period over period comparison of our utilization rates will fluctuate.'" OB at 16 (quoting Ex. 4 at 16-17).[3] Align also made clear that ClinAdvisor was still being tested and that Align was releasing the tool to a limited number of GPs so that any issues could be uncovered and addressed, issues which Align also disclosed as they were discovered. OB at 9-10. Align was not required to further "warn" the market that one of its employees purportedly believed the software tool to be somehow "flawed." ¶ 48.[4] Such vague allegations simply do not rise to the level of materialized risk.[5]

---

(...continued from previous page)
impression of a state of affairs that differed in any meaningful way from the one that actually existed. OB at 8-10, 13 (citing Order at 12).

[3] References to Exs. 1-15 refer to exhibits attached to the Declaration of Molly Arico in Support of Defendants' Motion to Dismiss filed September 7, 2011.

[4] The determination that ClinAdvisor was purportedly "flawed" is attributed to CW10, an engineer who apparently reached this conclusion before the testing process had even begun. As Defendants noted in their opening brief, plaintiffs have not alleged a sufficient basis for attributing high level product determinations to CW10. OB at 14, 17 nn.5, 6. Plaintiffs do not address these arguments in their opposition and thus concede that CW10 was not in a position to know that Defendants thought ClinAdvisor was somehow "flawed."

[5] None of plaintiffs' cases supports the notion that one employee's unsubstantiated opinion about a product that was still in testing has to be disclosed in order for cautionary statements to

(continued...)

1    Third, plaintiffs argue that some of the statements are not forward-looking because they were accompanied by present tense statements. Opp. at 10. For example, plaintiffs claim the statement "'the new ClinAdvisor integration into our first level certification will help . . . further'" is a present tense statement because it was followed by the statement "[w]e are seeing the ramp a little bit faster. These are all relative statements . . . the bigger effect is more of a widespread general slow but important increase in utilization growth across most cohorts or previously trained docs." Opp. at 9-10; ¶ 96. Plaintiffs do not explain how Mr. Prescott's subsequent comments about certain trends transformed his statement regarding objectives for ClinAdvisor into a non-forward-looking statement. They do not. Order at 10 (citing 15 U.S.C. § 78u-5(i)(A)-(C) (defining "forward looking statement" as, inter alia… "a statement of [] plans and objectives") (alteration in original)). At any rate, to the extent Mr. Prescott's predictions for the future of the ClinAdvisor integration were based on these present tense statements, they would also qualify as forward looking. *See Hockey v. Medhekar*, No. C-96-0815 MHP, 1997 WL 203704, at *4-5 (N.D. Cal. Apr. 15, 1997) (statements concerning predictions of future earnings based on statements concerning past or present facts qualified as "forward-looking statements"); *In re Copper Mountain Sec. Litig.*, 311 F. Supp. 2d 857, 880 (N.D. Cal. 2004) (explaining that predictions regarding future economic performance are forward-looking and present-tense statements may qualify as forward-looking "'if the truth or falsity of the statement cannot be discerned until some point in [the future].'") (citations omitted).

### D. Align Did Not Omit Any Material Information

**Efficacy.** Defendants showed in their opening brief that, when analyzed side by side,

---

(...continued from previous page)
be sufficient. *Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1097 (1991) (evaluating materiality under Section 14(a) and Rule 14a-9 and discussing statements of opinion, not safe harbor or cautionary statements), *vacated by Sandberg v. Va. Bankshares, Inc.,* No. 91-1783 (L), 1993 WL 524680 (4th Cir. 1993); *In re Convergent Tech. Sec. Litig.*, 948 F.2d 507, 515 (9th Cir. 1991) (finding company's disclosures adequately warned investors about specific product line; company not obligated to disclose internal projections; no discussion of safe harbor); *Lormand,* 565 F.3d at 244-47 (finding safe harbor inapplicable where plaintiffs adequately alleged defendants knew statements were false when made and, unlike here, disclosures were generic, formulaic and boilerplate).

none of plaintiffs' CW allegations establishes that any of Defendants' statements about ClinAdvisor's efficacy was false or misleading. Plaintiffs largely ignore these arguments and apparently hope to obscure the issues by addressing Defendants' statements en masse. This tactic is improper and does not demonstrate falsity at any rate.[6]

*January 2007 Statements*. Plaintiffs again assert that the following statements by Mr. Prescott were false in light of plaintiffs' CW allegations: "'we are finding that doctors are using it for real-time as we had originally thought;'" "'I think the jury is still out on this hundred, but the net is that they are more comfortable using it;'" and "'[t]hat is still right'" in response to a question of whether the "'ultimate hypothesis, which was that this would help get more GPs started more confidently, seems to be holding.'" Opp. at 4-5 (citing ¶ 70).[7] These statements all relate to GP use and confidence with ClinAdvisor during its initial pilot launch. No CW contradicts any of these statements. OB at 13-14.

Rather than address these fatal omissions, plaintiffs simply point to all of their CW allegations in hopes of creating an illusion of falsity. Opp. at 5. Yet, the CW allegations they reference are irrelevant to the statements at issue. For example, plaintiffs point to CW9's allegation that he informed Mr. Prescott that ClinAdvisor could not be commercially launched until June 2007. Opp. at 5 (citing ¶ 45). This allegation says nothing about whether or not ClinAdvisor was helping GPs gain confidence during the pilot test, and at any rate, is consistent with when ClinAdvisor was actually commercially launched. ¶ 95. Plaintiffs also point to CW allegations about purportedly "poor feedback" and reports that ClinAdvisor was "ineffective." Opp. at 5 (citing ¶¶ 48, 50, 76). Again, however, these vague allegations do not show that GPs were not, in fact, using ClinAdvisor for real-time or gaining more confidence at the time Mr.

---

[6] The Ninth Circuit has noted that this type of litigation tactic where plaintiffs persist in "repeating general allegations, mixing together allegations about Defendants' statements and analysts' statements, and omitting pertinent parts of the challenged statements" is improper because it "makes it difficult for courts to sort through and determine the merits of a claim." *Syntex*, 95 F.3d at 932, n.9.

[7] While the SAC misleadingly asserts that the "hypothesis" at issue was of increasing sales and utilization rates (¶¶ 7, 74), plaintiffs admit in their opposition that the hypothesis was actually related to confidence and case selection. Opp. at 5; Ex. 8 at 11.

Prescott made these statements.

*April 2007 Statements*.  While the SAC challenges Mr. Prescott's statement in April 2007 that "ClinAdvisor starts to help them select the right cases and support them as they get going. And so, ClinAdvisor is a first step for the GP towards being a trusted advisor, a clinical resource, and leading them more towards a turn-key solution" (¶ 84), plaintiffs' opposition is silent as to this statement.  Plaintiffs apparently concede that none of their CW allegations renders this statement false or misleading.  OB at 14-15.

*July 2007 Statements*.  Plaintiffs assert that Mr. Prescott's statement that ClinAdvisor "has now been launched nationally.  Early feedback tells us it really helps newly certified and less experienced doctors select appropriate cases based on their experience and skill set, which is exactly what we were hoping to achieve" was misleading because he continued to conceal that ClinAdvisor was a "flawed concept" and "not working."  ¶ 95; Opp. at 7.  Yet, the CW allegations plaintiffs cite for this proposition all involve earlier time periods during ClinAdvisor's pilot program.  OB at 15.  The only CW allegation plaintiffs reference from the July time period is CW9's allegation that a marketing study confirmed earlier indications that ClinAdvisor "'was not improving revenue or meeting its projected sales.'"  Opp. at 7 (quoting ¶ 104).  Yet, this allegation does not dispute that ClinAdvisor was helping less experienced doctors select appropriate cases, which, as discussed above, was the stated goal for ClinAdvisor.  Moreover, although CW9's claims about revenue are entirely irrelevant to Mr. Prescott's statements about the commercial launch of ClinAdvisor, the allegations are not at all surprising given that ClinAdvisor had just launched commercially and could not possibly be expected to have any significant effect on revenue at that point in time.

**Utilization.**  Plaintiffs' opposition ignores two key points with respect to utilization, both of which render plaintiffs' claims nonviable.

First, Align never indicated that ClinAdvisor would lead to increased utilization rates and the SAC is misleading to the extent it argues Align did so.  OB at 15-17.  Plaintiffs blatantly ignore this fact and persist with selectively quoting Defendants' statements to create the illusion that statements regarding increased utilization were linked to ClinAdvisor when in fact they were

1  not. For instance, plaintiffs continue to assert that the following statements were directed at
2  ClinAdvisor when an examination of Defendants' actual statements shows that any references in
3  Align's public statements to increasing utilization rates were addressed to Align's general GP
4  certification program, not ClinAdvisor. *Compare* Opp. at 7 *with* OB at 16-17 (citing ¶ 95 ("[t]his
5  program has been tested and will be rolled out broadly as a key element of our customer
6  utilization growth strategy"), ¶ 96 ("[w]e are seeing newly certified doctors start their cases
7  sooner. We are seeing the ramp a little bit faster. These are all relative statements. The ramp to
8  adoption a little quicker in those newer trained cohorts of doctors. So – but the bigger effect is
9  more of a widespread general slow but important increase in utilization growth across most
10 cohorts of previously trained docs[,]"), ¶ 97 ("[w]e continue to see expansion in our customer
11 base, both newly trained and repeat submitters, as well as progress in utilization growth for
12 orthos, GPs, and international, as well as solid demand at the consumer level.")).[8] Plaintiffs
13 continued insistence that these statements pertain to ClinAdvisor is disingenuous at best.[9]
14 Because Align never claimed that ClinAdvisor would increase utilization during the Class
15 Period, plaintiffs' claims regarding ClinAdvisor must fail.
16   Second, plaintiffs have not adequately alleged a proper basis for their CW allegations that
17 Defendants knew ClinAdvisor would not increase utilization. OB at 17-19. Again, plaintiffs
18 completely ignore these arguments and offer nothing to bolster the credibility of the CWs at
19 issue. For instance, plaintiffs repeatedly cite to CW9's allegation that ClinAdvisor was not
20 meeting its projected sales and that ClinAdvisor was the reason Align missed its case shipment

---

[8] Plaintiffs do not dispute that no CW contradicts Mr. Prescott's statements that the GP certification program was a key element of Align's growth strategy and no CW questions that Align was, in fact, experiencing an increase in utilization at the time these statements were made. OB at 16.

[9] Apparently acknowledging that Align itself never made these statements, plaintiffs point to various analyst reports concerning increasing utilization. Opp. at 10-11. First, like plaintiffs do with Defendants' statements, plaintiffs improperly paraphrase to make it seem like these analysts are referring to ClinAdvisor when they are actually referring to Align's general GP certification program. ¶ 73. Second, to the extent that analysts claimed that ClinAdvisor would lead to increasing utilization, Align never endorsed or adopted those statements, and thus, cannot be held liable for them. *Syntex*, 95 F.3d at 934.

guidance for Q3 by a mere 1000 cases. Opp. at 7-8, 25. Yet, CW9 was a training manager who is conveying information purportedly learned from other Align employees. Plaintiffs offer no reason why the Court should credit this hearsay when it is contrary to both Align's reported earnings and common sense. OB at 18-19.

### III. WHETHER CONSIDERED SEPARATELY OR HOLISTICALLY, THE SAC'S ALLEGATIONS FAIL TO RAISE A STRONG INFERENCE OF SCIENTER[10]

Plaintiffs argue they have met their pleading burden because "the SAC, when viewed holistically, renders 'an inference of scienter at least as likely as any plausible opposing inference.'" Opp. at 3, 17-18 (citing *Tellabs Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 328 (2007)). While plaintiffs imply that the Court previously neglected to review their allegations holistically, in fact, the Court held that "plaintiff's allegations, whether viewed separately or holistically, are insufficient to raise an inference of scienter that is as 'cogent and at least as compelling as any opposing inference of nonfraudulent intent.'" Order at 23 (citing *Tellabs*, 551 U.S. at 314). The SAC offers no new meaningful allegations and, as before, plaintiffs' generic allegations fall far short, however they are viewed. OB at 19-24.

**Internal Reports and Sales Meetings.** Despite their tacit admission that "[n]one of the confidential witness statements implicate [Mr. Prescott] directly," plaintiffs claim their scienter arguments are "bolstered" by CW accounts "implicating the prominence" of the purportedly concealed information about Patients First and ClinAdvisor. Opp. at 18-20. As this Court previously found, however, plaintiffs' generic CW allegations about the existence of internal meetings and reports do not actually show that there was any concealed information, much less

---

[10] Plaintiffs suggest corporate scienter may be established by pleading the scienter of any corporate official. Opp. at 8, n.3. While this Circuit has left open the question of whether collective scienter may be established in some narrow circumstances "in which a company's public statements were so important and so dramatically false that they would create a strong inference that at least some corporate officials knew of the falsity," this is not such a case. *Glazer Capital Mgmt. LP v. Magistri,* 549 F.3d 736, 744-45 (9th Cir. 2008). Because plaintiffs have not alleged that either Messrs. Prescott or Bullington acted with scienter, plaintiffs fail to allege the scienter of Align. In addition, plaintiffs offer no facts supporting an inference that Mr. Bullington's retirement was indicative of fraud. *E.g., Zucco Partners, LLC v. Digimarc Corp.,* 552 F.3d 981, 1002 (9th Cir. 2009) (conclusory allegations that executive resigns during class period insufficient to support strong inference of scienter).

that Mr. Prescott had access to it at the time he made the challenged statements. Order at 18-20. The SAC offers nothing new to alter this conclusion.

While it is true that "[v]ague or ambiguous allegations are [ ] properly considered," "'omissions and ambiguities count *against* inferring scienter.'" *South Ferry LP No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008) (citing *Tellabs,* 551 U.S. at 326) (emphasis added). Plaintiffs' CW allegations offer nothing but omissions and ambiguities as to Defendants' purported knowledge. Even when read together, as plaintiffs urge, these vague CW allegations do not support an inference of scienter because they do not show that Mr. Prescott was presented with any information contradicting his public statements. OB at 20-22.

**Core Operations.** Plaintiffs argue that this is one of the "unusual circumstances" in which it is appropriate to invoke the core operations inference. Opp. at 18-19 (citing *South Ferry*, 542 F.3d at 784). It is not. Plaintiffs' reliance on *South Ferry* is misplaced. In *South Ferry*, the plaintiffs pleaded actual knowledge by alleging the CEO repeatedly told the investing public that "I know what I'm talking about," displayed "intimate knowledge" of bank's information delivery, risk-management structure and hedging capacity, and represented to investors that he had all the information necessary to make accurate predictions. *South Ferry LP No. 2 v. Killinger*, 687 F. Supp. 2d 1248, 1258-60 (W.D. Wash. 2009). Here, Mr. Prescott did not similarly speak with a "high degree of specificity on more than one occasion" on the topics which were allegedly false. *Id.* at 1259. Without "'detailed and specific allegations about management's exposure to factual information within the company,'" the core operations inference does not save plaintiffs' claims. *Zucco Partners,* 552 F.3d at 1000-01 (quoting *South Ferry,* 542 F.3d at 785).[11]

---

[11] Plaintiffs also claim that Mr. Prescott's compensation structure adds to the scienter mix because it is not plausible that Mr. Prescott was unaware of the fact that ClinAdvisor was a flawed concept given that it was "critical" to the Company's success. Opp. at 19. ClinAdvisor, however, was not "critical" to Align's success and no CW alleges as much. Rather, as Mr. Prescott made clear, ClinAdvisor was merely a "first step" in Align's plan to attract more GP interest in Invisalign. OB at 3-4. *No. 84 Employer Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 944 (9th Cir. 2003), is therefore distinguishable because, unlike here, defendants in that case were found to have a motive to inflate the company's financial results where their eligibility for stock options and bonuses "were based principally on

(continued...)

DEFENDANTS' REPLY BRIEF ISO MOTION TO
DISMISS PLAINTIFFS' SECOND AMENDED
COMPLAINT, C-09-03671-MMC

-13-

4723879_1.DOCX

**Admissions.**  Despite the Court's prior ruling that "defendants *did not* make 'admissions' that were contradictory to or necessarily inconsistent with [Defendants' Class Period statements]," (Order at 21-22) (emphasis added), plaintiffs once again point to Mr. Prescott's purported admissions in October 2007 that Align's sales representatives had been engaged in helping to clear the backlog of Patients First cases.  Opp. at 20-21.  Plaintiffs offer nothing new with respect to these allegations and they should be rejected again.

**Stock Sales.**  The Court previously held that neither the amount nor small percentage sold by Mr. Prescott gives rise to a strong inference under clear Ninth Circuit precedent because when calculated properly, "[Mr.] Prescott sold only 29% of his aggregate holdings."  Order at 22; OB at 23-24.  Ignoring both the Court's Order and the binding Ninth Circuit precedent cited therein, plaintiffs cite (as they did in their previous briefing) a Southern District of New York case from 1999 for the proposition that vested options should be excluded from a defendant's holdings on a motion to dismiss.  Opp. at 21 (citing *In re Oxford Health Plans, Inc.*, 187 F.R.D. 133, 140 (S.D.N.Y. 1999)).  This is not the law in the Ninth Circuit or even in the Second Circuit.  *See In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 986-87 (9th Cir. 1999) (stock shares plus exercisable stock options represent owner's trading potential) (citing *Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 54 (2d Cir. 1995)), *rev'd on other grounds by South Ferry,* 542 F.3d 776.

Plaintiffs also claim that the Court misapplied *Metzler*.  Opp. at 21-22.  Yet, the three part test outlined in *Metzler* is easily met here because (1) Mr. Prescott sold only 29 % of his holdings; (2) the only sales were made well before the October 24, 2007 disclosure and at prices that did not maximize gains, and (3) contrary to plaintiffs' claims that Mr. Prescott's sales diverted from his 10b5-1 trading plan (Opp. at 22), Mr. Prescott had no 10b5-1 trading plan in place at the time of his Class Period sales.  Ex. 16.[12]

---

(...continued from previous page)
the company's financial performance" and defendants had not received any options in the previous year.

[12] Mr. Prescott's Form 4 filing with the SEC indicate that he did not have a 10b5-1 trading plan in place since 2004, three years before the Class Period.  This exhibit is attached to the Supplemental Declaration of Molly Arico in Support of Defendants' Motion to Dismiss, filed concurrently herewith.

Finally, despite the Court's Order clearly ruling otherwise, plaintiffs continue to include stock sales by other Company insiders as supposed evidence of Defendants' scienter. *Compare* Opp. at 22-23 *with* Order at 23. Plaintiffs ignore the multiple cases supporting the Court's holding that such sales should not be considered. Order at 23 (citing *In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1082 n.22 (N.D. Cal. 2001); *Plevy v. Haggerty*, 38 F. Supp. 2d 816, 834 n.12 (C.D. Cal. 1998)); *see also In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2005 WL 1910923, at *12 (N.D. Cal. Aug. 10, 2005); *In re Lexar Media, Inc. Sec. Litig.*, No. C-04-2013 SC, 2005 WL 1566534, at *6 (N.D. Cal. July 5, 2005); *In re Vantive Corp. Sec. Litig.,* 283 F.3d 1079, 1094 (9th Cir. 2002), *abrogation on other grounds recognized by South Ferry,* 542 F3d 776).[13] Even if considered, these other insider sales were at similar times following earnings releases, well before the bad news, and thus are not suspicious.

## CONCLUSION

For the reasons set forth herein and in Defendants' opening brief, Defendants respectfully request that the SAC be dismissed in its entirety with prejudice.

Dated:  December 21, 2011                Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
PROFESSIONAL CORPORATION
650 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 493-9300
Facsimile:  (650) 493-6811

By:      /s/ Douglas J. Clark.
         Douglas J. Clark

Attorneys for Defendants Align Technology, Inc. and Thomas Prescott

---

[13] Plaintiffs' citations are not to the contrary. Each of the cases cited in the opposition involved courts analyzing an individual's stock sales solely for purposes of evaluating that individual's scienter. *In re Secure Computing Corp., Sec. Litig.*, 184 F. Supp. 2d 980, 989-90 (N.D. Cal. 2001) (considering defendants' stock sales in support of their own scienter, which took place during a limited two-week period and were "almost immediately" before negative disclosure); *Am. West*, 320 F.3d at 940  (court considered stock sales of non-speakers in inferring their own scienter, not that of other defendants); *In re Daou Systems, Inc.,* 411 F.3d 1006, 1022, 1024 (9th Cir. 2005) (while plaintiffs argued non-defendant sales should be considered, court only analyzed defendants' own sales in evaluating their scienter).

**ATTESTATION PURSUANT TO GENERAL ORDER 45**

I, Katherine L. Henderson, attest that concurrence in the filing of this document has been obtained from the signatory, Douglas J. Clark. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 21th day of December, 2011 at San Francisco, California.

By: ___/s/ Katherine L. Henderson___
Katherine L. Henderson

Counsel for Defendants Align Technology, Inc. and Thomas Prescott